# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 6, 2011 Session

## DAVID CANTRELL v. JOE EASTERLING, WARDEN

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Hardeman County**
**No. 09-02-0415      Joe Walker, Judge**

---

**No. W2009-00985-SC-R11-HC - Filed August 1, 2011**

---

GARY R. WADE, J., concurring in the judgment.

I can concur that the petitioner's sentence is illegal and void because it directly contravenes the multiple rapist sentencing statute. By granting limited habeas corpus relief and remanding to the trial court for entry of a corrected sentence, the majority has essentially adopted the position of the State. While this result is proper under these specific circumstances, I would submit that the ruling today is inconsistent with the opinion in Edwards v. State, 269 S.W.3d 915 (Tenn. 2008), a case I continue to believe was wrongly decided. Moreover, in an apparent effort to conform its decision today with rulings in our previous habeas corpus cases, the majority has created new and heightened standards for relief which, in my assessment, will serve to further confuse this area of the law. Finally, I believe that this case offered an opportunity to overrule altogether our decision in Edwards and, by doing so, reconcile a series of our prior opinions on the subject of habeas corpus.

## Background

Article I, section 15 of the Tennessee Constitution preserves the right to seek habeas corpus relief in our state courts. The writ of habeas corpus has been regulated in Tennessee by statute for over one hundred years. Faulkner v. State, 226 S.W.3d 358, 361 (Tenn. 2007); see also Tenn. Code Ann. § 29-21-101(a) (Supp. 2010) ("Any person imprisoned or restrained of liberty, under any pretense whatsoever, except in cases specified in subsection (b) and in cases specified in § 29-21-102, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment and restraint."). Although the statutory language is broad, "the grounds upon which habeas corpus relief will be granted are narrow" and "[h]abeas corpus relief is proper only if the petition establishes that the challenged judgment is void, as opposed to merely voidable." Hickman v. State, 153 S.W.3d 16, 20 (Tenn. 2004) (citations omitted). This Court has held that the writ of habeas corpus may be sustained "only when it appears upon the face of the judgment or the record of the proceedings . . . that

a court lacked jurisdiction or authority to sentence a defendant or that the sentence has expired." Stephenson v. Carlton, 28 S.W.3d 910, 911 (Tenn. 2000); accord State v. Galloway, 45 Tenn. (5 Cold.) 326, 336-37 (1868). An illegal sentence qualifies as void and may be set aside through habeas corpus at any time. Summers v. State, 212 S.W.3d 251, 256 (Tenn. 2007) (citing Moody v. State, 160 S.W.3d 512, 516 (Tenn. 2005)).

Thirty-three years ago, this Court decided State v. Burkhart, 566 S.W.2d 871 (Tenn. 1978), the leading case on the subject of illegal sentences. Burkhart, who was serving a sentence for burglary, escaped from prison. When he pled guilty to a charge of escape, the trial court imposed a concurrent sentence, even though the relevant statute required a consecutive term. Id. at 872. The concurrent sentence was imposed "in direct contravention of the express [statutory] provisions . . . and consequently was a nullity." Id. at 873. Citing holdings in a number of other jurisdictions, this Court ruled that "a trial judge may correct an illegal, as opposed to a merely erroneous, sentence at any time, even if it has become final." Id. (emphasis added). Because Burkhart asserted that his plea was the result of an agreement that was no longer valid, the Court observed that if his allegation was "true, [he] would be entitled to proceed to trial on [the escape] charge" and remanded for a hearing on that issue. Id. Burkhart, therefore, has primarily stood for the proposition that an illegal sentence imposed by a trial court – that is, a sentence that directly contravenes express statutory provisions – may be set aside at any time, and, further, that a remand is likely warranted when the illegal sentence is the result of a plea agreement.

The decision in State v. Mahler, 735 S.W.2d 226 (Tenn. 1987), signaled an important development in this area of the law in the context of a plea agreement. Mahler, who was charged with first degree murder, pled guilty to second degree murder and, even though his prior criminal history warranted only a Range I classification, agreed to be sentenced as a Range II offender. Id. at 226-27. Later, he filed a post-conviction petition arguing that his sentence was illegal. Id. at 227. While acknowledging that a judgment in contravention of statute is illegal and may be set aside at any time, this Court distinguished Burkhart and denied relief for two reasons: "[t]he sentence imposed was clearly within statutory limits fixed for [second degree] murder" and "any question as to the classification of appellant as a Range II offender or as to his release eligibility was waived by the guilty plea." Id. at 228. For the first time, this Court drew a distinction between a sentence imposed by a trial court and one agreed to by plea bargain.

In Hicks v. State, 945 S.W.2d 706 (Tenn. 1997), decided ten years after Mahler, this Court restated the distinction. Hicks filed a post-conviction challenge to his "hybrid" sentence: he had entered into a plea agreement with the State to serve a Range II sentence of ten years for voluntary manslaughter with a Range I release eligibility of thirty percent. Id. at 706. While observing that the Court of Criminal Appeals was split on the propriety of

such a sentence under the Criminal Sentencing Reform Act of 1989 ("1989 Act"), id. at 708-09, this Court denied relief, holding, as in Mahler, that "a knowing and voluntary guilty plea waives any irregularity as to offender classification or release eligibility." Id. at 709. The Hicks opinion noted that Mahler had been published for more than a year when the General Assembly passed the 1989 Act, and "[h]ad the legislature intended for the new Act to be interpreted differently, it would have been a simple matter to limit a prosecutor's use of offender classification and release eligibility as plea bargaining tools." Id. Because the General Assembly chose not to do so, the Court determined that the legislature's intent was to permit the practice. Id. Hicks, having entered into the plea agreement knowingly and voluntarily, could not later mount a collateral attack on the legality of his sentence even though the release eligibility determination contravened the provisions of the 1989 Act.

The decision in McConnell v. State, 12 S.W.3d 795 (Tenn. 2000), established limits to the rulings in Mahler and Hicks. McConnell, who had previously pled guilty to second degree murder and robbery, filed for post-conviction relief, arguing that his sentence was illegal because it was calculated pursuant to the Criminal Sentencing Reform Act of 1982 even though he had committed the offense after the 1989 Act became effective. Id. at 796-97. This Court reaffirmed the holding in Hicks, observing that offender classification and release eligibility determinations were proper "subjects of plea bargain negotiations" and that "[t]hese elements of plea bargaining" qualified "as non-jurisdictional." Id. at 798. Because, however, the term of years exceeded the statutory maximum under the 1989 Act, id. at 800, this Court granted relief from the convictions, explaining that, "[w]hile it is true that a plea bargain agreement is contractual, contract principles extend only so far." Id. at 799 (citation omitted). Allowing a sentence in excess of the statutory maximum simply because it is the product of a plea agreement would, according to the Court as constituted at that time, "be an obvious and impermissible intrusion on the clear Constitutional prerogative of the Legislature to define the contours of a trial court's jurisdiction." Id.

In Moody, 160 S.W.3d at 512, decided five years after McConnell, this Court established the procedure for challenging an illegal sentence. Convicted of aggravated assault and spousal sexual battery, Moody, by agreement with the State, was placed on probation pursuant to a program that required him to register as a sex offender. Id. at 514. During his probation, "Moody neither sought a direct appeal of his convictions and sentences nor challenged them in a post-conviction or habeas corpus proceeding." Id. Almost four years later, however, after his probation was revoked, he filed a "Motion to Correct Errors in Judgment," arguing that his sentence was illegal because neither of the offenses of which he was convicted was a "sexual offense" for registration purposes as defined by statute. Id. at 514-15. Moody appealed the trial court's denial of his motion by filing a petition for writ of certiorari, but the Court of Criminal Appeals dismissed the appeal, holding that he should have sought relief from the sentences through a habeas corpus petition. Id. at 514. This

Court affirmed, holding "that the proper procedure for challenging an illegal sentence at the trial level is through a petition for writ of habeas corpus, the grant or denial of which can then be appealed under the Rules of Appellate Procedure." Id. at 516 (citing Stephenson, 28 S.W.3d at 912).[1]

In Smith v. Lewis, 202 S.W.3d 124 (Tenn. 2006), this Court confirmed the principle that an illegal sentence apparent on the face of the judgment or within the record of the underlying proceedings renders the judgment void, but also held that where the illegality is in the sentence rather than the conviction, only the sentence is void, and the conviction may remain intact. Id. at 130. Smith had pled guilty to one count of child rape and agreed to serve fifteen years as a Range I offender. Id. at 126. Although the original and amended orders provided that he would be eligible for early release, this was not permissible under Tennessee Code Annotated section 39-13-523(b) (Supp. 1996), which provides that one convicted of child rape must serve the full sentence without possibility of early release.[2] Id. at 127. The Court, while holding that Smith's sentence was illegal, remanded to the trial court of conviction for a corrected sentence, to be served at 100%, but did not vacate the underlying conviction, explaining that "where the illegality infects only the sentence, only the sentence is rendered void and habeas corpus relief may be granted to the extent of the sentence only. In such cases, the underlying conviction remains intact." Id. at 130. Unlike the procedure adopted in Burkhart, in apparent reliance on Stephenson,[3] this Court chose not

_____

[1] Later, in Summers, 212 S.W.3d at 261, this Court refined how the illegality of a sentence might be established when the alleged defect does not appear on the face of the judgment. In his habeas corpus petition, Summers claimed that by imposing his sentence for escape concurrently with his other sentences, the trial court's order contravened Tennessee Code Annotated section 39-16-605(c) and Tennessee Rule of Criminal Procedure 32(c)(3)(B), both of which require consecutive sentencing for an escape conviction. Id. at 256. We held that when there is "an illegal sentence claim based on facts not apparent from the face of the judgment, an adequate record for summary review must include pertinent documents to support those factual assertions." Id. at 261. Because the judgment on his escape conviction was "facially valid and Summers failed to support his factual assertions with pertinent documents from the record of the underlying proceedings," this Court determined that it was proper for the trial court to have dismissed his petition without either appointing counsel or holding a hearing. Id. at 262. Summers, therefore, necessarily recognizes a challenge to a possible jurisdictional defect in a sentence that is "not apparent from the face of the judgment," so long as "pertinent documents" from the record are attached that establish the illegality of the sentence.

[2] This statute is the same one at issue in this case, as it contains the requirement of mandatory service at 100% for multiple rapists as well as child rapists.

[3] In Stephenson, this Court, after affirming a first degree murder conviction, setting aside a death penalty, and remanding for re-sentencing, reviewed the propriety of a subsequent plea agreement providing for a sentence of life without the possibility of parole. 28 S.W.3d at 911. Because life without parole was

(continued...)

-4-

to remand to the trial court for a determination of whether Smith would be allowed to withdraw his plea, because "the record . . . [did] not demonstrate on its face that the illegal provision . . . was a bargained for element of [the] plea." Id.; see also McLaney v. Bell, 59 S.W.3d 90 (Tenn. 2001) (remanding for a determination of whether consecutive sentencing was mandatory, and, if so, permitting as an option the withdrawal of the plea).[4]

Hoover v. State, 215 S.W.3d 776 (Tenn. 2007), involved a plea agreement that included a thirty-five-year sentence as a Range I offender for second degree murder and attempt to commit especially aggravated robbery. Id. at 777. Hoover later filed a petition for writ of habeas corpus claiming that the sentence was illegal because the maximum Range I sentence for second degree murder was twenty-five years. Id. at 777-78. The trial court granted Hoover habeas corpus relief, but the Court of Criminal Appeals reversed. Id. at 778. Because the "plea-bargained sentence [wa]s well below the maximum punishment authorized for the plea offense of second degree murder" and because "a plea-bargained sentence is legal so long as it does not exceed the maximum punishment authorized for the plea offense," id. at 781, this Court denied relief, confirming the principle set forth in Mahler and Hicks that offender classification and release eligibility may be used as bargaining tools in plea negotiations. Id. at 780. As in McConnell, the Court referred to those two elements of sentencing as "non-jurisdictional," id., and held that "Hoover [had] waived any irregularity concerning his offender classification or release eligibility when he pleaded guilty." Id. at 780-81.[5]

---

[3](...continued)
not a statutorily authorized sentence for first degree murder at the time the offense was committed, the State on appeal conceded the illegality of the new sentence. Id. at 910. This Court held the sentence was void and remanded to the trial court "for further proceedings." Id. The "ruling d[id] not affect Stephenson's separate conviction and 60-year sentence for the offense of conspiracy to commit first-degree murder." Id. at 912 n.3.

[4] In Boykin v. Alabama, 395 U.S. 238 (1969), the United States Supreme Court held that a trial court may not accept a guilty plea "without an affirmative showing that it was intelligent and voluntary," id. at 242, and directed courts to "canvass[] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Grindstaff v. State, 297 S.W.3d 208, 218 (Tenn. 2009) (quoting Boykin, 395 U.S. at 244); see also Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006).

[5] Most recently, in Davis v. State, 313 S.W.3d 751 (Tenn. 2010) (Clark, J.), the Court reaffirmed that release eligibility determinations are "non-jurisdictional" with respect to plea-bargained sentences. Id. at 765. The majority wrote that "[o]ur interpretation of the Act allowing for the parties to agree on sentences that do not allow for early release on parole is consistent with our position that sentencing range classification and [release eligibility determinations] are non-jurisdictional elements of sentencing." Id. Davis is only the latest example of cases where this Court has unequivocally "drawn distinctions between illegal sentences imposed by the trial court without a plea bargain and illegal sentences imposed pursuant to a plea bargain." The majority's failure to acknowledge this distinction is a matter of concern.

-5-

Prior to the holding in Edwards, as indicated by this brief recitation of the lead cases on the subject of illegal sentences, there was some consistency in the progression of our rulings since Burkhart in 1978: (1) an illegal sentence is one imposed in direct contravention of express statutory provisions, and may be corrected at any time; (2) a knowing and voluntary guilty plea waives any challenge to a sentencing irregularity concerning offender classification or a release eligibility, so long as the resulting sentence falls within the range permitted by the 1989 Act; (3) the proper procedure for correcting an illegal sentence is through the writ of habeas corpus; (4) if the illegality affects only the sentence, then the underlying conviction remains intact unless the guilty plea is allowed to be withdrawn; and (5) offender classification and release eligibility are "non-jurisdictional" with respect to plea-bargained sentences.

Breaking new ground, this Court in Edwards extended the concept of "non-jurisdictional" sentencing errors beyond the context of waiver in plea-bargained sentences and applied the term as a means of upholding a sentence imposed by the trial court after a jury trial, even though the sentence was in excess of that permitted by statute. 269 S.W.3d at 923-24. A jury convicted Edwards of burglary, and the trial court sentenced him as a Range III persistent offender. Id. at 917. Later, Edwards sought habeas corpus relief because he lacked the five convictions necessary to be sentenced as a persistent offender. Id. The Edwards majority, no longer relying on waiver by a knowing and voluntary plea, reiterated "'that offender classification and release eligibility are non-jurisdictional,'" id. at 923 (quoting Hoover, 215 S.W.3d at 780-81 (first emphasis added)), and ultimately denied relief:

> [O]ffender classification is a non-jurisdictional element of sentencing. Thus, errors and/or irregularities in offender classification are waived by a guilty plea, and are not grounds for habeas corpus relief if the sentence is imposed by a trial court after a jury conviction. Simply stated, habeas corpus relief is not available to correct errors or irregularities in offender classification.

Id. at 924 (emphasis added).

I continue to be unable to reconcile with established precedent the majority's decision in Edwards to deny habeas corpus relief where "the trial court imposed the Petitioner's sentence in direct contradiction of a sentencing statute after a jury verdict, [unlike] those in which the judgment has been entered through a guilty plea." 269 S.W.3d at 929 (Wade & Holder, JJ., dissenting); see also Davis, 313 S.W.3d at 771 (Wade & Holder, JJ., concurring) ("[A] sentence imposed by a trial court after conviction or an open plea of guilt (absent any negotiated term) that qualifies as illegal under our statutory scheme [sh]ould be subject to a meritorious [habeas corpus] attack.").

-6-

**Analysis**

In the case before us, neither the State nor the petitioner asked this Court to address the propriety of Edwards. In my view, however, Edwards stands for the proposition that after a guilty verdict (or an open plea of guilt), a sentence in contravention of statute is "non-jurisdictional" – merely voidable,[6] not void – and thus not subject to habeas relief. 269 S.W.3d at 924. For this reason, I believe that the majority's decision today and the ruling in Edwards are indistinguishable. Both involve a sentence imposed by the trial court after a jury trial that contained the very kind of error that this Court identified in Edwards as "non-jurisdictional." If habeas corpus relief was unavailable to Edwards, then it should likewise be unavailable in this instance and the sentence, even though in contravention of statute, should remain unchanged. Conversely, because the majority here has granted "relief" and remanded for correction by ordering 100% service of the sentence, we should have also granted relief in Edwards by ordering the appropriate, lesser sentence. Only by expressly overruling the expansion of the concept of "non-jurisdictional" errors in Edwards can we bring greater harmony to our habeas corpus decisions in the context of illegal sentences.

The majority submits that Edwards does not apply to this case because the trial court in Edwards had jurisdiction to make the error in offender classification, whereas the trial court here lacked jurisdiction to impose a sentence at 35% even though the petitioner was convicted as a multiple rapist, requiring 100% service of the sentence. The majority further states that "[t]he actual impact of Edwards . . . is limited to its unsurprising holding that an allegedly erroneous offender classification does not create an illegal sentence so long as the offender classification is available under the Sentencing Act." Even if the holding in Edwards is so limited, I see no logic in differentiating between offender classification and release eligibility determinations for purposes of discerning whether a sentence imposed by a trial court is illegal. The 1989 Act refers to the types of errors the majority classifies as "appealable errors," specifically mentioning appeals of "the length, range or the manner of service of the sentence imposed by the sentencing court," as well as "the imposition of consecutive sentences." Tenn. Code Ann. § 40-35-401(a) (2010). Both offender classification and release eligibility determinations involve "the length, range or the manner of service" of a sentence. Moreover, this Court has repeatedly ruled that both offender classification and release eligibility determinations are "non-jurisdictional." See Davis, 313 S.W.3d at 765; Edwards, 269 S.W.3d at 924; Hoover, 215 S.W.3d at 780; McConnell, 12 S.W.3d at 798. If, as the majority suggests, Edwards is limited in its reach to cases involving erroneous offender classifications, did this Court err in Davis, Edwards, Hoover, and

---

[6] This Court has defined "a voidable judgment [a]s one that is facially valid and requires proof beyond the face of the record or judgment to establish its invalidity." Summers, 212 S.W.3d at 256 (citing Dykes v. Compton, 978 S.W.2d 528, 529 (Tenn. 1998)).

-7-

<u>McConnell</u> by also referring to release eligibility determinations as "non-jurisdictional?"

I am also concerned about the majority's suggestion that habeas corpus is not available to challenge a sentence, like the one in <u>Edwards</u>, that was imposed due to a trial court's erroneous findings of fact. On this point, the majority explores uncharted territory. I know of no prior rulings by this Court stating that the availability of habeas relief turns on whether the illegality of the sentence is based upon a finding of fact or a mistake in the law. Both <u>Edwards</u> and the case at issue involved errors in the application of facts (the number of prior convictions and the number of rape convictions, respectively) to the law (the relevant statutes governing sentencing). The majority's distinction between sentencing errors based upon findings of fact and those based upon mistakes of law is nowhere to be found in <u>Edwards</u> or in any of our prior decisions involving illegal sentences.[7] My concern is that the decision today further clouds this troublesome area of the law.

As I stated in the concurring opinion in <u>Davis</u>, I believe that it is essential for this Court to set forth a workable rule for the trial courts addressing "illegal sentences" in habeas corpus petitions. Today's majority opinion properly reiterates the long-held principle, first enumerated in <u>Burkhart</u>, that a sentence is illegal and void, and thus may form a basis for habeas relief, if it is imposed "in direct contravention of a governing sentencing statute" or if it is a sentence "not available under the sentencing statutes governing the case." <u>See</u> <u>Edwards</u>, 269 S.W.3d at 921. Because offender classification is determined by reference to a statutory scheme, <u>see</u> Tenn. Code Ann. §§ 40-35-105 to -109 (2010), I believe that a sentence which is not a part of a plea agreement and which includes an offender classification, either unavailable under or in direct contravention of the governing statutes, qualifies as illegal. It is difficult to fathom how any sentence imposed by the trial court could contain "errors and/or irregularities in offender classification" resulting in a term of imprisonment beyond legislative authority and not "directly contravene[] a governing statute." <u>Edwards</u>, 269 S.W.3d at 924.

Expressly overruling <u>Edwards</u> would not, of course, affect the waiver rule first set

---

[7] Indeed, the <u>Edwards</u> majority defines "non-jurisdictional" errors as "factual <u>or legal</u> errors a court makes in the exercise of its jurisdiction." 269 S.W.3d at 924 (emphasis added). The majority justifies its unprecedented distinction between findings of fact and conclusions of law by asserting that it is "rely[ing] upon the plain language of" Tennessee Code Annotated section 40-35-401(a). That provision, however, makes no distinction between findings of facts and conclusions of law, but merely states that there is no appellate review of a sentence in a post-conviction or habeas proceeding. If an error as to "the length, range or the manner of service of the sentence" or "the imposition of consecutive sentences" results in an illegal sentence because the trial court did not have the jurisdiction to impose it, that error may form the basis for habeas relief. Such an error could be based upon incorrect findings of fact, erroneous conclusions of law, or both.

forth in <u>Mahler</u> and followed in <u>McConnell</u>, <u>Hoover</u>, and <u>Davis</u> – all cases in which the sentence was agreed to by guilty plea. Offender classification and release eligibility determinations should still be the subject of plea negotiations provided that the agreed sentence is within the statutory minimum and maximum for the particular offense. A knowing and voluntary guilty plea may serve as a waiver of irregularities in offender classification or release eligibility; if, however, a trial court, after a conviction or upon an open plea of guilt, imposes a sentence in contravention of our statutory scheme, including an erroneous offender classification or release eligibility determination, a petitioner would be entitled to habeas corpus relief.

**Conclusion**

Applying this standard to the circumstances before us, I can concur with the majority. Because the petitioner's sentences for his four aggravated rape convictions, all of which were imposed by the trial court after verdicts of guilt, are in direct contravention of Tennessee Code Annotated section 39-13-523(b) (Supp. 1995), his petition for writ of habeas corpus should be granted and the cause remanded for entry of amended judgment orders in compliance with that statute.

I am authorized to state that Justice Holder joins in this concurring opinion.

_____
GARY R. WADE, JUSTICE